UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VIRGINIA L. BAKKER,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A., a national corporation; FREDDIE MAC, a government-sponsored enterprise; and WACHOVIA MORTGAGE CORP., a North Carolina corporation,<br><br>Defendants. | 03:10-cv-00082-HU<br><br>**FINDINGS AND RECOMMENDATIONS** |

Phil Goldsmith
Nanina D. Takla
Law Office of Phil Goldsmith
1618 SW First Avenue, Suite 350
Portland, OR 97201
Telephone: (503) 224-2301
Facsimile: (503) 222-7288

   Attorneys for Plaintiff

Jonathan M. Radmacher
McEwen Gisvold LLP
1100 SW Sixth Avenue, Suite 1600
Portland, OR 97204
Telephone: (503) 412-3522
Facsimile: (503) 243-2687

   Attorney for Defendants

1 - FINDINGS AND RECOMMENDATIONS

**HUBEL, J.,**

This action arises from a January 29, 2007 mortgage loan transaction on the residence of plaintiff Virginia Bakker ("Plaintiff") located at 3434 NE 77th Street in Portland, Oregon. Plaintiff filed her complaint on January 27, 2010, alleging a single cause of action for rescission under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, against defendants Wells Fargo Home Mortgage ("Wells Fargo"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), and Wachovia Mortgage Corporation ("Wachovia") (collectively, "Defendants"). Now before the court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(c). For the reasons set forth below, the Court recommends that Defendants' motion (Docket No. 74) for summary judgment be **DENIED**.

## *I. BACKGROUND*

On January 29, 2007, Plaintiff executed a promissory note ("the Note") in the amount of $125,000 and a Deed of Trust against her real property, securing the Note. The Note provided for interest to accrue at the rate of 6.25% per annum. At that time, Plaintiff had sufficient income to afford the monthly principal and interest payment of $769.65, as well as the monthly escrow for taxes and insurance. However, after the economic down-turn in 2008, Plaintiff stopped making her mortgage payments in January of 2009 because she could no longer afford them.

On January 27, 2010, Plaintiff filed this action against Defendants claiming violations of TILA and seeking statutory damages under § 1640(a)(2), rescission under § 1635, and attorneys' fees under § 1640(a)(3).

2 - FINDINGS AND RECOMMENDATIONS

1    In July of 2011, while preparing to mediate the case, Plaintiff was offered a loan modification under the Home Affordable Modification Program ("HAMP"), 12 U.S.C. § 5219a. HAMP "is a federal program whereby the United States government privately contracts with banks to provide incentives to enter into residential mortgage modifications." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 665 (9th Cir. 2012).[1] As part of the loan modification process under HAMP, Plaintiff was required to make three trial period payments of $779.81, which were due on August 1, 2011, September 1, 2011, and October 1, 2011.

    On December 19, 2011, after making timely trial period payments, Plaintiff signed a permanent loan modification agreement under HAMP, which was executed on behalf of Wells Fargo on March 6, 2012. The HAMP agreement decreased Plaintiff's monthly principal and interest payment by over $170 for five years, lowered her interest rate (i.e., interest was to accrue at the rate of 2% per annum for five years, 3% per annum for the sixth year, and 4% per annum thereafter), and added nearly two years to the loan's maturity date. By signing the HAMP agreement, Plaintiff also agreed to the following provisions:

> That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

---

[1] "In March 2009, the United States Department of Treasury announced the details of the Home Affordable Modification Program as part of the Making Home Affordable Program. Under HAMP, individual loan servicers voluntarily enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives." *Id.* (citing *Newell v. Wells Fargo Bank, N.A.*, 2012 WL 27783, at *1 (N.D. Cal. Jan. 5, 2012)).

3 - FINDINGS AND RECOMMENDATIONS

. . . .

>  That the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms and are hereby affirmed.

(Radmacher Decl. Ex. 103 at 3-4.)

It is Plaintiff's position, however, that she did not intend, nor did she agree, to relinquish her right of rescission under TILA. In fact, Plaintiff's counsel represents to the Court that there was a mutual understanding that Plaintiff would be able to continue pursuing her case against Defendants. This issue lies at the heart of Defendants' motion for summary judgment and Plaintiff's opposition thereto.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is not proper if factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus,

4 - FINDINGS AND RECOMMENDATIONS

summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovick v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). The "mere existence of a scintilla of evidence in support of plaintiff's positions [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

### *III. DISCUSSION*

This case raises the issue whether a plaintiff-consumer may exercise his or her right of rescission under TILA, despite agreeing to a subsequent loan modification under HAMP.

Defendants argue that, by agreeing to the HAMP agreement's favorable and unambiguous terms, Plaintiff ratified the original

5 - FINDINGS AND RECOMMENDATIONS

loan and relinquished her right of rescission. Plaintiff counters by arguing that the "parties understood the modification was completely separate from litigation of [her] TILA rescission claim." (Pl.'s Resp. at 6.) In fact, Plaintiff claims Defendants' former counsel "made clear that [she] could receive a permanent modification without waiving her TILA rescission claim." (Pl.'s Resp. at 6.)

In terms of case law, Defendants' counsel concedes "[t]here appears to be no cases, in either federal or state court, where a party seeking to exercise rescission rights under TILA has entered into a written modification agreement after filing suit, which explicitly re-affirms the validity of the Note and Deed of Trust." (Defs.' Mem. Supp. at 4.) Plaintiff's counsel also characterizes the question presented in this case as one of first impression. (Pl.'s Resp. at 2.)

Perhaps the most instructive case, according to Defendants' counsel, is *In re Crevier*, 820 F.2d 1553 (9th Cir. 1987). There, a married couple, the Creviers, filed a petition in bankruptcy and then proceeded to secure a loan by conveying a trust deed on estate property without the trustee's or bankruptcy court's consent. *Id*. at 1554. Upon learning of the loan, the trustee sued the lender "to avoid the trust deed under 11 U.S.C. § 549, alleging that the [p]roperty belonged to the [bankruptcy] estate and that the transfer of the trust deed was therefore an unauthorized post-petition transfer." *Id.* at 1554. The trustee and lender, with the bankruptcy court's authorization, entered into a settlement agreement whereby the lender promised to pay the estate $50,000 in exchange for the trustee ratifying the lender's trust deed. *Id.*

6 - FINDINGS AND RECOMMENDATIONS

Soon thereafter, the Creviers brought an action under TILA to rescind the trust deed and loan. *Id.*

Pursuant to § 1635, "consumers have the right to rescind a security interest in property which is their principal dwelling only if they possess an ownership interest and thus have the right to convey the security interest." *Id.* at 1556. Because the Creviers attempted to convey, as security for the loan, estate property which they did not own and had no right to convey (i.e., since the property passed by operation of law to the Chapter 7 estate upon commencement of the bankruptcy proceeding), the Ninth Circuit held that the loan was not a transaction secured by their property interest in their residence as required under TILA. *Id.* at 1557. The Creviers therefore failed to state a claim for rescission of the loan and deed of trust. *Id.*

Defendant's counsel urges the Court to follow the logic found in a footnote in *Crevier*, where the Ninth Circuit stated: "Nor did the Creviers acquire any TILA rescission rights from the trustee when the trustee abandoned the [p]roperty to the Creviers. The trustee extinguished any right to rescind he might have had under TILA by ratifying [the lender]'s trust deed in settlement of his action to avoid the lien." *Id.* at 1557 n.4.[2] The Ninth Circuit has also recognized, albeit in another context, that the act of refinancing an existing loan transaction cuts of the right of rescission as to the earlier loan. *See King v. State of Cal*, 784

---

[2] "If an asset has been formally scheduled under § 521(a)(1) but has not been administered by the trustee when the estate is closed, the asset is abandoned to the debtor by operation of law." *In re Furlong*, 660 F.3d 81, 86 (1st Cir. 2011).

7 - FINDINGS AND RECOMMENDATIONS

F.2d 910, 913 (9th Cir. 1986) ("The loan of March 1981 cannot be rescinded, because there is nothing to rescind. [Plaintiff] refinanced that loan in November 1981, and the deed of trust underlying the March 1981 loan has been superseded.") *But see Handy v. Anchor Mortg. Corp*, 464 F.3d 760, 765 (7th Cir. 2006) (agreeing with the Sixth Circuit's rejection of *King* because the TILA legislation and regulations do not state "that the act of refinancing an existing loan transaction by itself cuts of the right of rescission." (quoting *Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 878 (6th Cir. 2006))).

Citing *Parker v. De Kalb Chrysler Plymouth*, 673 F.2d 1178 (11th Cir. 1982), Plaintiff claims that Defendants' ratification argument is contrary to TILA. In *Parker*, the Eleventh Circuit held that a borrower's release did not bar her TILA claim because they were "convinced that she was unaware that the release encompassed her TILA rights." *Id.* at 1182. More importantly, *Parker* emphasized that the release itself did not contain any reference to prospective TILA claims and instead used the boiler plate language of "any and all claims." *Id.* Because the public relies heavily on individual consumers acting as "private attorneys general" to effectuate the disclosures required under TILA, *id.* at 1181, *Parker* concluded that "consumers may . . . be unfairly deceived if [courts were to] allow such broad language to bar their claims under an Act . . . which was passed for the protection of all borrowers, both gullible and sophisticated." *Id.*

I find the district court's decision in *Mills v. Home Equity Group, Inc.*, 871 F. Supp. 1482 (D.D.C. 1994), persuasive in light of the factual similarities to this matter. In *Mills*, the

8 - FINDINGS AND RECOMMENDATIONS

plaintiff entered into a loan agreement on December 20, 1991, which was secured by a deed of trust on her residence. *Id.* at 1484. After failing to meet her monthly payment obligations, the plaintiff, who was represented by pro bono counsel, entered into a purported settlement agreement which restructured the loan and included a release of any potential TILA claims she "had, have or might have against Lender arising out of or relating to the Original Loan documents[.]" *Id.* The plaintiff later defaulted on the restructured loan and foreclosure proceedings ensued in May of 1994. *Id.* On June 9, 1994, the plaintiff sent the defendants a notice of rescission, which was within the three-year period for rescinding the December 20 1991 loan. *Id.* The *Mills* court held that the waiver was ineffectual, stating:

> TILA is important consumer protection legislation. Its terms must be complied with meticulously. In this case, there was clearly a violation of TILA. Because TILA was violated, Plaintiff had the right to rescind which right cannot be released or waived absent the narrowly drawn circumstances found in TILA for such waiver. [*See infra* at 10, lines 16-24.] As Defendant concedes, the waiver provisions were not met.
>
> . . . .
>
> Plaintiff properly exercised her right to rescind within three years of the consummation of the loan transaction. This right was not waived by the settlement entered into with Defendant. Plaintiff was not told she had the unequivocal right to rescind. . . . For there to be any basis to argue that Plaintiff waived her statutorily conferred rights, she would have had to at the least been given the right to rescind and declined to assert it.
>
> At no time did Defendant[s] . . . offer her such a right. Rather at all times, Defendant[s] . . . denied that Plaintiff had a valid claim under the [TILA].

*Id.* at 1486.

9 - FINDINGS AND RECOMMENDATIONS

In this case, the court has previously concluded that Plaintiff's allegations regarding deficient notice were sufficient to state a claim for rescission under TILA. *See Bakker v. Wells Fargo Home Mortg.*, No. 3:10-cv-00082-HU, 2011 WL 1124041, at *4 (D. Or. Feb. 28, 2011) ("Reg[ulation] Z makes clear that failure to fill in the expiration date of the rescission form is a violation of TILA." (quoting *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699 (9th Cir. 1986))). In ruling on Defendants' motion for summary judgment, the Court has been asked "to assume that the substantive basis for Plaintiff's TILA rescission claim was meritorious, and that she had a right to bring a claim under TILA to rescind the loan."[3] (Defs.' Mem. Supp. at 1.)

This assumption makes *Mills* all the more persuasive because, if "TILA was violated, Plaintiff [would have] the right to rescind which . . . cannot be released or waived absent the narrowly drawn circumstances found in TILA for such waiver." *Mills*, 871 F. Supp. at 1486. Regulation Z, promulgated by the Federal Reserve Board, indicates that a consumer "may modify or waive the right to rescind if the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency. To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the right to rescind, and bears the signature of all of the consumers entitled to rescind." 12 C.F.R. § 226.23(e)(1). Nothing in the record suggests the waiver provisions

---

[3] And in any event, no evidence has been presented indicating that a TILA violation has not occurred here.

10 - FINDINGS AND RECOMMENDATIONS

were met, nor has Plaintiff been given the right to rescind and/or declined to assert it.

Neither party addressed the *Mills* decision in their briefing for the instant motion. As a result, during the May 31, 2012 hearing, I invited the parties to submit supplemental briefing on the application of that decision to this case. Not surprisingly, Plaintiff acknowledges that "[t]he factual circumstances of *Mills* are remarkably similar to those here" and "buttresses the . . . conclusion that [D]efendants' motion for summary judgment should be denied." (Pl.'s Supp. Mem. at 3, 6.)

Most notably, Defendants argue *Mills* is factually distinguishable because the decision "addresses only the ability (or inability) of a party to waive or release a rescission claim which it would <u>otherwise</u> have the ability to bring under TILA." (Defs.' Supp. Br. at 2.) It seems somewhat inconsistent to make this argument when Defendants previously asked the Court "to assume that the substantive basis for Plaintiff's TILA rescission claim was meritorious, and that she had a right to bring a claim under TILA to rescind the loan." (Defs.' Mem. Supp. at 1.) Defendants also claim this case is more akin to *Tucker v. Beneficial Mortgage Co.*, 437 F. Supp. 2d 584 (E.D. Va. 2006) and *In re Divittorio*, 670 F.3d 273 (1st Cir. 2012). Defendants' reliance on these cases is misplaced.

*Tucker* upheld a waiver incorporated into a settlement agreement negotiated by the state Attorney General on behalf of a class of consumers that the plaintiffs had joined. *Tucker*, 437 F. Supp. 2d at 587. *Tucker* determined that the TILA release did not undermine legislative intent because (1) the Attorney General

11 - FINDINGS AND RECOMMENDATIONS

effectively took on the role of enforcing the provisions of TILA for consumers; (2) the plaintiffs were put on notice that the release of all claim could potentially encompass TILA claims; (3) there was little to no indication of unequal bargaining power; (4) the release was not a general one prepared by the creditor and presented to the borrower on a take-it-or-leave-it basis; and (5) the settlement imposed a penalty on the lender in order to ensure that it followed disclosure regulations in the future. *Id.* at 588.

In this case, unlike *Tucker*, the release procured by Defendants was far more general and Plaintiff claims she was not aware it encompassed her TILA claims. I am also not persuaded that Defendants have been penalized in such a way that will deter future disclosure violations. After all, under HAMP, "loan servicers enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives." *Nevada*, 672 F.3d at 665.

In *DiVittorio*, the plaintiff attempted to rescind the transaction more than six years after the consummation of the transaction and was not seeking to invoke his TILA right of rescission within the three-year statute of limitations. *DiVittorio*, 670 F.3d at 285-86. Because the plaintiff's right of rescission under TILA had long expired, the court determined that "his ability to waive any rescission right was not cabined by the requirements of" TILA or its regulations (i.e., 12 C.F.R. § 226.23(3)(1)). *Id.* at 285. The First Circuit distinguished *Mills* on this ground. *Id.* n.9. With respect to the plaintiff's argument that recognizing his waiver would thwart TILA's policies, the First

12 - FINDINGS AND RECOMMENDATIONS

Circuit observed that circumstances suggested that his waiver was knowing and voluntary. *Id.* at 286-88. Based on the record before me, that is not the case here.

In short, the *Mills* court's holding has been favorably cited by a district court in the Ninth Circuit, *Hoffman v. Lloyd*, No 06-2416 MHP, 2008 WL 298820, at *2 n.1 (N.D. Cal. Feb. 1, 2008), and I do so again today. Accordingly, Defendants' motion for summary judgment should be **DENIED** because the waiver of rights under the circumstances presented here thwarts the legislative policy which TILA was designed to effectuate. *See Johnson v. Steven Sims Subaru, Inc.*, No. 92 C 6355, 1993 WL 761231, at *5 (N.D. Ill. June 9, 1993) (recognizing that TILA's "enforcement scheme would be greatly hampered if lenders or lessors were permitted to procure general releases of liability from TILA claims").

### *IV.  CONCLUSION*

For the foregoing reasons, the Court recommends that Defendants' motion (Docket No. 74) for summary judgment be **DENIED**.

### *V.  SCHEDULING ORDER*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **July 16, 2012**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **August 2, 2012**. When the response is due or filed,

13 - FINDINGS AND RECOMMENDATIONS

whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 26th day of June, 2012.

/s/ Dennis J. Hubel

_____
DENNIS JAMES HUBEL
Unites States Magistrate Judge

14 - FINDINGS AND RECOMMENDATIONS