IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**VIRGINIA L. BAKKER,**

        Plaintiff,

        v.

**WELLS FARGO HOME MORTGAGE et al.,**

        Defendants.

No. 3:10-cv-00082-HU

OPINION AND ORDER

**MOSMAN, J.**,

      On June 26, 2012, Magistrate Judge Hubel issued his Findings and Recommendation ("F&R") [89] in the above-captioned case, recommending that I deny defendants' motion for summary judgment [74]. Defendants filed objections [91], and plaintiff filed a response [95]. Upon review, I agree with Judge Hubel's recommendation, and I ADOPT the F&R [89] as my own opinion. I write separately only to address defendants' objections.

## STANDARD OF REVIEW

      The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or

1 – OPINION AND ORDER

recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

## DISCUSSION

Although defendants raise seven objections to the F&R, they can be reduced to three fundamental arguments: (1) the court improperly considered evidence of plaintiff's intent when entering into the HAMP agreement; (2) the court improperly relied on an erroneous interpretation of Regulation Z; and (3) the court conflated the legally distinct concepts of ratification and waiver. I will address each of these arguments in turn.

### I.      Plaintiff's Intent

Defendants' first four objections are that the court improperly considered evidence of plaintiff's intent when entering into the HAMP agreement despite there being no dispute that the agreement was unambiguous. (Defs.' Obj. [91] at 2–4.) According to defendants, the HAMP agreement is a contract like any other. Based on that assumption, defendants argue that Oregon law provides the rule of decision and that Oregon courts look beyond a document to the intent of the parties only if a provision is unclear. *Wicker v. Ebner*, 543 F.3d 1168, 1174 (9th Cir. 2008) ("If the provision is clear, the analysis ends.") (quoting *Yogman v. Parrott*, 325 Or. 358, 361, 937 P.2d 1019, 1021 (1997)). Defendants are incorrect.

First, the HAMP agreement is not an ordinary contract. TILA cases consistently hold that "issues relating to the validity of and defenses to purported releases of federal statutory causes of action are matters of federal law." *Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178, 1180 (11th Cir. 1982); *see also Dice v. Akron, Canton & Youngstown Railroad Co.*, 342 U.S. 359, 361–62 (1952) (reasoning that "federal rights . . . under a federally declared standard could be defeated if states were permitted to have the final say as to what defenses could and could not be properly interposed"). Thus, federal law rather than state law provides the rule of decision here.

Second, in applying federal law, Judge Hubel found *Mills v. Home Equity Group, Inc.*, 871 F. Supp. 1482 (D.D.C. 1994), persuasive in light of the factual similarities to this matter. To find waiver in a factually similar context, the *Mills* court held that a consumer must at least be told she had a right to rescind and then must decline to exercise that right. *Id*. at 1486. Neither occurred here, and Judge Hubel therefore concluded that a finding of waiver would thwart the legislative policy that TILA was designed to effectuate. (F&R [89] at 13.) Any discussion of plaintiff's intent when entering into the HAMP agreement is superfluous to this analysis. As a result, I reject defendants' first four objections.

## II.     Regulation Z

Defendants' fifth objection is that the court relied too heavily on the requirements for waiver in Regulation Z. (Defs.' Obj. [91] at 4–5.) According to defendants, to the extent that Regulation Z purports to regulate post-transaction agreements made after a TILA lawsuit has been filed, it goes beyond the implementation authority granted to the agency. Specifically, defendants argue that Judge Hubel's interpretation of Regulation Z would grant the agency the power to dictate the means by which a consumer could reach a settlement and would eliminate

the doctrine of ratification. Defendants do not believe that Congress intended either result. Thus, they argue that Judge Hubel adopted on an erroneous interpretation of Regulation Z.

As I read the F&R, however, Judge Hubel's interpretation of Regulation Z is not as expansive as defendants suggest. In fact, the F&R acknowledges alternative common law bars to TILA rescission claims in circumstances distinguishable from those in the present case. In *Tucker v. Beneficial Mortgage Company*, 437 F. Supp. 2d 584, 587–88 (E.D. Va. 2006), for example, the court held that consumers need not be told about their right to rescind where the Attorney General effectively took on the role of enforcement in their behalf. Similarly, in *In re DiVitterio*, 670 F.3d 273, 285–86 (1st Cir. 2012), the court analyzed a common law, rather than statutory, right to rescind where the consumer had not attempted to rescind within the three-year statutory period.

Plainly, then, Judge Hubel did not adopt a categorical rule that a consumer must always be told she has the right to rescind and then must decline to exercise it in order to find waiver under TILA. Instead, Judge Hubel found that where a consumer attempts to exercise her statutory right to rescind in this particular factual context, that right cannot be waived absent the narrowly drawn conditions found in TILA and its implementing regulations. *See Mills*, 871 F. Supp. at 1485–86. Therefore, I reject defendants' fifth objection.

### III.  Ratification v. Waiver

Defendants' sixth and seventh objections are that the court conflated the legally distinct concepts of ratification and waiver. (Defs.' Obj. [91] 5–6.) In support of these objections, defendants rely on *In re Crevier*, 820 F.2d 1553 (9th Cir. 1987). In a footnote, the *Crevier* court stated that a trustee had extinguished any right to rescind he had under TILA by ratifying a lender's trust deed when he settled his action to avoid a lien. *Id*. at 1557 n.4. Based on this

4 – OPINION AND ORDER

footnote, defendants argue that ratification is a legally distinct concept from waiver in the TILA context and that plaintiff ratified the original loan transaction when she signed the HAMP agreement. As a result of this alleged ratification, defendants' position is that I am not presented with the question of waiver at all. I disagree.

The footnoted language upon which defendants rely indicates only that a settlement agreement can validly extinguish a TILA rescission claim. Here, in contrast, plaintiff signed a HAMP loan modification agreement rather than a settlement agreement. The distinction is significant. Indeed, at least one court has previously highlighted the distinction between settlement agreements and loan modification agreements. *See Tucker*, 437 F. Supp. at 588–89 (distinguishing *Mills* on the fact that it dealt with "a loan restructuring rather than a settlement agreement"). The wisdom of this distinction is manifest in the fact that loan modification agreements often include language reaffirming the validity of the original loan transaction. Therefore, if *Crevier* stood for the proposition that any reaffirmation of the original loan transaction relinquished all TILA rescission claims, there would be a categorical bar to these claims whenever loan modification agreements generally reaffirmed the original loan transaction. Such a bar would seem to thwart the legislative policy TILA was designed to effectuate. Accordingly, I reject defendants' sixth and seventh objections.

## CONCLUSION

Defendants' motion for summary judgment [74] is therefore DENIED for the reasons outlined in Judge Hubel's F&R.

IT IS SO ORDERED.

DATED this __19th__ day of October, 2012.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge